IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**MELVIN EDWARDS,**

    **Petitioner,**

v.                              CASE NO. 21-3177-JWL

**UNITED STATES OF AMERICA[1]
and DONALD HUDSON, Warden,**

    **Respondents.**

## MEMORANDUM AND ORDER

This matter is a petition for habeas corpus filed under 28 U.S.C. § 2241. At the time of filing, Petitioner was in federal custody at USP-Leavenworth in Leavenworth, Kansas. Petitioner challenges the Bureau of Prisons' ("BOP") denial of early release benefits for participation in the Residential Drug Abuse Program ("RDAP"). Petitioner also challenges his consideration for pre-release residential reentry center ("RRC") placement. The Court finds that Petitioner does not allege facts establishing a federal constitutional violation and denies relief.

**I. Background**

Petitioner is currently serving a 70-month sentence for Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). Declaration of H. Degenhardt ("Degenhardt decl."), ¶ 3, Exh. A (Doc. 4–1, at 2, 6–7). Petitioner has a projected release date of February 4, 2023, via good conduct time. *Id*.; Doc. 4–1, at 5, 8.

Petitioner alleges that his request for benefits for participating in the RDAP was denied. (Doc. 1, at 1.) Petitioner seeks "to benefit from the placement in the RRC halfway house

---

[1] Petitioner was incarcerated at USP Leavenworth at the time of filing and the proper Respondent in this case is the Warden of USP Leavenworth—Donald Hudson.

placement, and a year off his sentence based upon petitioner['s] completion of the [RADP] [sic] program." (Doc. 1, at 7.)

**II. Discussion**

To obtain habeas corpus relief, an inmate must demonstrate that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A § 2241 petition is appropriate when a prisoner challenges the execution of his sentence rather than the validity of his conviction or sentence. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997).

Petitioner alleges that the BOP denied him due process when he was denied benefits for completion of the RDAP program "and other Bureau of Prisons programs that are offered through education programs." (Doc. 1, at 1.) The BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). Federal inmates who were convicted of a nonviolent offense and who successfully complete a drug abuse program are eligible for a reduction of their sentence of up to one year. 18 U.S.C. § 3621(e)(2)(B); *see Fernandez-Perez v. Greilick*, 2021 WL 4515253, at *1 (10th Cir. Oct. 4, 2021) (unpublished) ("Inmates who successfully complete RDAP may be eligible for early release from confinement.") (citing 18 U.S.C. § 3621(e)(2)(B)).

Petitioner also challenges his consideration for pre-release RRC placement. Petitioner claims that he meets all the criteria established by BOP Policy Statement 7310.04 and 18 U.S.C. §§ 3624 and 3635. (Doc. 1, at 6.) Section 3624(c)(1) provides that:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a

>reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1).  In determining whether placement in an RRC or other prerelease custody is appropriate, the BOP conducts an individualized assessment based on the five factors set out in § 3621(b). *See* 18 U.S.C. § 3621(b).

Federal prisoners proceeding under § 2241 must exhaust their available administrative remedies. *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) ("The exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, although we recognize that the statute itself does not expressly contain such a requirement.") (citation omitted)).  The exhaustion requirement allows the BOP "an opportunity to correct its own mistakes . . . before it is hauled into federal court" and it discourages "disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotations omitted). The exhaustion requirement is satisfied when the petitioner "us[es] all steps that the agency holds out." *Id.* at 90.

The BOP's four-part administrative remedy program is codified at 28 C.F.R. § 542. *See also* Program Statement 1330.18, *Administrative Remedy Program*.  The program is designed to address a federal inmate's concerns regarding any aspect of his or her confinement.  Degenhardt decl., ¶ 4, Ex. B.  The policy affords federal inmates the opportunity to voice their grievances and provides staff an opportunity to resolve issues in-house prior to an inmate seeking relief through the judicial system. *Id*.

The administrative remedy program requires an attempt at the informal resolution of a grievance followed by formal grievances addressed at the institutional, regional, and national levels.  The BOP's administrative remedy process involves four steps:

>First, the inmate raises an informal complaint to BOP staff, who "shall attempt to informally resolve the issue." 28 C.F.R.

> § 542.13(a). Second, the inmate files an Administrative Remedy Request, or BP-9 form, with the warden. § 542.14(a). Third, the inmate appeals to the regional director through a BP-10 form, which must be accompanied by "one complete copy or duplicate original" of the BP-9 and the warden's response. § 542.15(a), (b)(1). Fourth, the inmate appeals to the general counsel at the central office with a BP-11 form that must also be accompanied by "one complete copy or duplicate original of the institution and regional filings"—i.e., the BP-9 and BP-10 forms—"and their responses." § 542.15(a), (b)(1).

*Fernandez-Perez v. Greilick*, 2021 WL 4515253, at *1. Exhaustion requires completing all levels of review. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (finding that exhaustion requires "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)") (citation omitted)). "If an inmate does not receive a response within the allotted time for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

Respondent alleges that Petitioner failed to fully exhaust administrative remedies before filing this action. Since July 1990, the BOP has maintained information related to administrative complaints filed by inmates under the BOP's Administrative Remedy Program in a national database called "SENTRY." *See* Degenhardt decl., ¶ 6. One of the many functions of the SENTRY database is to track administrative remedy complaints and appeals. *Id*. This system allows for a computerized search of complaints and appeals. *Id*.

Each complaint is logged into SENTRY at the receiving location. *Id*. at ¶ 7. If the complaint is an initial filing, it will be assigned a unique "Remedy ID Number" upon initial entry, which will follow the complaint throughout the appeal process. *Id*. Each "Remedy ID Number" also contains an extender that identifies the level of review. *Id*. The extension "F-_" indicates the complaint was filed at the institution level. *Id*. The extension "R-_" indicates the complaint or appeal was filed with the Regional Director. *Id*. The extension "A-_" indicates the

appeal was filed with the National Inmate Appeals Section, Central Office. *Id*. The number at the end of the extension will change if the appeal is refiled due to a prior rejection at that level. *Id*.

When a remedy is rejected, notice of the rejection and the reason for the rejection is provided to the inmate and the administrative remedy submission is mailed back to the submitting inmate. *Id*. at ¶ 8. The rejection is logged into SENTRY using the REJ code, indicating the remedy has been rejected. *Id*. An additional Code indicating the reason(s) for the rejection or other information/instructions provided to the inmate is also logged into SENTRY. *Id*.

The automated administrative remedy records in the SENTRY database concerning each inmate are not purged and can be searched back as far as inception of the system. *Id*. at ¶ 9. Indexes must be maintained in computer accessible form for twenty (20) years and then destroyed. *Id*. Pre-SENTRY indexes are maintained at the site of creation for twenty (20) years and then destroyed. *Id*. However, the hard copies of the actual administrative remedy files are maintained for a period of three (3) years and then destroyed. *Id*.

A review of Petitioner's administrative remedy history reveals that Petitioner has not exhausted his administrative remedies regarding his claims related to his assessment for placement at an RRC and early release for completion of the RDAP program. *Id*. at ¶ 10, Ex. C (Petitioner's Administrative Remedy Data). The only administrative remedy Petitioner has filed is Remedy #962715-F1, which he has appealed to the Regional (962715-R1) and Central Office (962715-A1 and 962715-A2) levels. *Id*. at ¶¶ 10–11, Ex. C. This remedy concerns medical treatment for his right hand and right knee. *Id*. Accordingly, Petitioner did not exhaust his

administrative remedies or appeals regarding the issues raised in his Petition through the BOP's Administrative Remedy Program. *Id*. at ¶ 10.

Petitioner claims that he did attempt to exhaust his administrative remedies by filing a BP-8 on June 29, 2021, seeking informal resolution. (Doc. 7, at 1–2.) Petitioner claims that despite not receiving a response to his BP-8, he proceeded to file a BP-9 to the Warden and again did not receive a response. *Id*. at 2. Petitioner cites cases from other jurisdictions suggesting that the lack of a response fulfills Petitioner's duty to exhaust. *Id*. However, if an inmate does not receive a response within the allotted time for a reply, including extensions, the inmate may consider the absence of a response to be a denial at that level. *See* 28 C.F.R. § 542.18.

Petitioner also argues that exhaustion would be futile. (Doc. 7, at 3–4.) Petitioner claims that in light of his February 4, 2023 projected release date, the timing would render exhaustion futile. *Id*. Petitioner argues that his claims would be moot if he was required to complete exhaustion. *Id*. at 4.

Although exhaustion of available administrative remedies is a prerequisite for § 2241 habeas relief, a narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion would be futile. *Daybell v. Davis*, 366 F. App'x. 960, 962 (10th Cir. 2010) (unpublished) (citing *Williams v. O'Brien*, 792 F.2d 986, 987 (10th Cir. 1986) (per curiam); *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 235–36 (6th Cir. 2006)); *See Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010) (recognizing "narrow exception to the exhaustion requirement" when "petitioner can demonstrate that exhaustion is futile").

The petitioner in *Garner* likewise argued that the Court should waive the exhaustion requirement because the delay caused by exhaustion would deprive him of the opportunity to

receive a full twelve-month placement in an RRC. *Garner v. United States*, Case No. 21-3138-JWL, 2021 WL 3856618, at *2 (D. Kan. Aug. 30, 2021). This Court held that:

> similar arguments regarding the timing of administrative review have been rejected. In *Salters v. Hudson*, this Court rejected petitioner's argument that exhaustion should be excused because it would take too long and cause irreparable harm. *Salters*, 2020 WL 3960427, at *3. The Court noted that a similar argument was rejected in *Gaines v. Samuels*, where petitioner argued that requiring full exhaustion would deprive him of time in an RRC. *Id.* (citing *Gaines v. Samuels*, No. 13-3019-RDR, 2013 WL 591383, at *2 (D. Kan. Feb. 14, 2013) (finding no extraordinary circumstance to warrant waiver of exhaustion requirement); *see also McIntosh v. English*, No. 17-3011-JWL, 2017 WL 2118352 (D. Kan. May 16, 2017)). The Court noted in *Gaines* that "[t]he Supreme Court has required that even those inmates who may be entitled to immediate release exhaust their administrative remedies." *Id.* (citing *Gaines*, 2013 WL 591383, at *2 (citing *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973))); *see also Koger v. Maye*, No. 13–3007–RDR, 2013 WL 591040, at *2–3 (D. Kan. Feb. 14, 2013) (rejecting a similar argument and finding that "exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will not obtain relief on administrative appeal before the final year of his sentence ... [t]he twelve-month mark in the Second Chance Act is an express statutory maximum, and not a mandated minimum.").

*Garner*, 2021 WL 3856618, at *3; *see also Samples v. Wiley,* 349 F. App'x 267, 269 (10th Cir. 2009) (unpublished) (finding futility argument not supported by contention that administrative process is too slow and it was unlikely the BOP procedure would be completed by the date on which petitioner would have needed to be transferred to an RRC in order to receive a twelve-month RRC placement).

The petitioner in *Hardison* alleged that further attempts at exhaustion would have been futile in light of the DSCC's consistent practice of denying early release benefits to RDAP participants with felon in possession convictions. *Hardison v. English*, Case No. 16-3223-JWL, 2017 WL 2461497 (D. Kan. June 7, 2017). Although the Court agreed that exhaustion may be

7

futile in light of the BOP's categorical denial, the Court found that the petitioner failed to establish a due process violation. *Id*. at *3. Likewise, even if the Court were to find exhaustion futile in this case, Petitioner has not alleged facts establishing a federal constitutional violation. *See Martinez v. Davis*, 393 F. App'x 570, 571 (10th Cir. 2010) (unpublished) (noting that pursuant to the Tenth Circuit's decision in *Montez v. McKinna*, 208 F.3d 862 (10th Cir. 2000), the Court may choose to address the merits without considering the issue of exhaustion).

Petitioner has not established a due process violation because he has no constitutionally protected interest in a sentence reduction under the RDAP. "A prisoner has no constitutional right to participate in RDAP, . . . and similarly, a prisoner has no liberty interest in discretionary early release for completion of RDAP." *Standifer v. Ledezma*, 653 F.3d 1276, 1280 (10th Cir. 2011) (citing *Fristoe v. Thompson*, 144 F.3d 627, 630 (10th Cir. 1998) (stating that § 3621(e)(2)(B) "allows a decisionmaker to deny the requested relief within its unfettered discretion [and] does not create a constitutionally-recognized liberty interest")); *Brown v. Hudson*, Case No. 21-3042-JWL, 2021 WL 843236, at *2 (D. Kan. March 5, 2021) (stating that reduction in sentence for completion of RDAP "is within the discretion of the BOP, and participating prisoners are informed at the outset of the program that early release is not guaranteed").

"The governing statute, 18 U.S.C. § 3621(e), does not implicate a constitutionally-protected liberty interest because it does not mandate a sentence reduction." *Brown*, 2021 WL 843236, at *3 (citing *see Royal v. Scibana*, 309 F. App'x 284, 286 (10th Cir. 2009) ("Just as a prisoner does not possess a constitutional right to a reduction of a valid sentence, ..., (he) does not possess a constitutional right to retain provisional eligibility for the reduction of a valid sentence.") (citation omitted); *Reyes v. Ledezma*, 2009 WL 1362606 (W.D. Okla., May 14,

2009).) "Section 3621(e)(2)(B) does not require the BOP to grant petitioner a one-year reduction in sentence; it merely permits the BOP to do so." *Brown*, 2021 WL 843236, at *3 (citing *see Zacher v. Tippy*, 202 F.3d 1039, 1041 (8th Cir.2000) ("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release.")). "Thus, federal courts have consistently held that § 3621(e) does not create a liberty interest in the RDAP or in early release from confinement." *Brown*, 2021 WL 843236, at *3 (citing *see, e.g. Cook v. Wiley*, 208 F.3d 1314, 1322–23 (11th Cir.2000) (A prisoner has no constitutional right to, or other protected liberty interest in, participation in the RDAP, or to early release upon completion of the RDAP.)).

Petitioner is currently serving a sentence for Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1) and § 924(a)(2). The Court in *Hardison* found that courts have upheld the BOP's policy which categorically denies early release eligibility for prisoners convicted of felon-in-possession charges. *Hardison*, 2017 WL 2461497, at *5 (citing *Licon v. Ledezma*, 638 F.3d 1303, 1305 (10th Cir. 2011) (concluding that the BOP's policy is not arbitrary, and therefore the BOP acted within its discretion by excluding inmates convicted of felon-in-possession charges); *Martin v. Rios*, 472 F.3d 1206, 1207 (10th Cir. 2007) ("Mr. Martin misreads *Lopez* insofar as he claims that it does not apply when the inmate's offense involved mere possession of a firearm."); *Satterwhite v. Rios*, 215 F. App'x 775, 776 (10th Cir. 2007) (unpublished) (rejecting argument that *Lopez* did not apply to felon in possession)); *see also* 28 C.F.R. § 550.55(b)(5)(ii) (providing ineligibility for up to twelve months of early release for completion of the RDAP for inmates with current felony conviction for offense that involved the carrying, possession, or use of a firearm).

Petitioner has also failed to state a claim regarding his RRC placement. He fails to

provide any supporting facts regarding his consideration for RRC placement. In *Garner* the Court noted that:

> in *Koger*, 2013 WL 591040, at *3, the Court found that despite the failure to exhaust, petitioner also failed to state a claim for relief where he alleged no facts to show that proper consideration of the requisite statutory provisions was not provided in determining his RRC placement. The Court concluded that petitioner failed to allege facts or provide exhibits showing that his SCA Consideration was without consideration of the requisite statutory factors or otherwise a violation of federal or constitutional law. However, the Tenth Circuit in *Garza* noted that the Court need not opine on the validity of petitioner's claims on their merits. *Garza*, 596 F.3d 1198, 1204.

*Garner*, 2021 WL 3856618, at n.3.

Petitioner has also failed to provide any factual support regarding his consideration for RRC placement. "Habeas corpus petitions must meet heightened pleading requirements," and "federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face." *Hansen v. Maye*, No. 14-3193-RDR, 2015 WL 847186, at *4 (D. Kan. Feb. 26, 2015) (quoting *McFarland v. Scott,* 512 U.S. 849, 856 (1994); Rule 2(c), 2254 Rules). Under Rule 2(c), "a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified." *Id*. (quotation omitted). "These facts must consist of sufficient detail to enable the court to determine, from the face of the petition alone, whether the petition merits further habeas corpus review." *Id*. (finding that petitioner failed to summarize the substance or provide an exhibit of any agency decision made in his case or to allege any facts whatsoever to support his claim that his Second Chance Act Consideration was decided without consideration of the requisite statutory factors or otherwise violated federal statutory or constitutional law).

To warrant habeas corpus relief, Petitioner must demonstrate that he "is in custody in

violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Because Petitioner fails to allege facts that state a constitutional violation, the Petition must be denied.

**IT IS THEREFORE ORDERED BY THE COURT** that the Petition for habeas corpus is **denied.**

**IT IS SO ORDERED**.

**Dated January 24, 2022, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**